1

08cr1695TJW

JOAN KERRY BADER
California State Bar No. 172586
964 Fifth Avenue, Suite 214
San Diego, California  92101-6128
Telephone:  (619) 699-5995
FAX (619) 699-5996
Attorney for Defendant OBESO


UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE THOMAS J. WHELAN)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 08CR1695TJW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MOTION AND NOTICE OF |
| | ) | MOTIONS TO COMPEL |
| VANESSA OBESO-SANCHEZ, | ) | DISCOVERY AND TO |
| | ) | SUPPRESS STATEMENTS |
| | ) | AND EVIDENCE AND |
| | ) | LEAVE TO FILE FURTHER |
| Defendant. | ) | MOTIONS |
|_____| ) | |

TO: KAREN HEWITT, UNITED STATES ATTORNEY;
    DALE BLANKENSHIP, ASSISTANT UNITED STATES ATTORNEY:

    The defendant, Vanessa Obeso-Sanchez, by and through her

counsel, Kerry Bader, respectfully asks this Court to grant

the motions listed below.

Dated: June 8, 2008          /s/JOAN KERRY BADER
                             Joan Kerry Bader,
                             Attorney for Defendant Obeso

//

1

JOAN KERRY BADER
California State Bar No. 172586
964 Fifth Avenue, Suite 214
San Diego, California  92101-6128
Telephone:  (619) 699-5995
fax (619)699-5996
Attorney for Defendant OBESO

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE THOMAS J. WHELAN)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 07CR2977JLS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MOTIONS FOR DISCOVERY |
| | ) | TO SUPPRESS STATEMENTS, |
| VANESSA OBESO-SANCHEZ, | ) | TO SUPPRESS EVIDENCE, |
| | ) | AND LEAVE TO FILE FURTHER |
| Defendant. | ) | MOTIONS |
| _____ | ) | |

**I.**

**STATEMENT OF FACTS**

On or about April 28, 2008, Ms. Obeso was arrested at

the Calexico Port of Entry in the Southern District of

California.  She has been indicted and is charged with

importation of and possession with the intent to distribute

approximately 81 pounds of marijuana (approximately 37

kilograms), violations of 21 USC sections 952, 960

and841(a)(1).

1

**II.**

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

Ms. Obeso, through counsel, has received some discovery in this case.

Ms. Obeso moves for the production of the following discovery. *This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies."* See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989). This would include any and all **"*ancillary files*"** concerning Ms. Obeso in the custody of any governmental agency or entity involved in this case.

In particular, Ms. Obeso asks that the narcotic that was seized in this case be preserved so that the defense may test and reweigh it. She also asks that all notes from any agent and recordings in this case be preserved.

Also, the defense specifically ask for discovery concerning the agents who detained, arrested and interrogated Ms. Obeso, including, but not limited to any Giglio, Henthorne or Brady discovery. Included in this

08cr1695TJW

request is any and all information that any of the agents are under investigation by any legal authority.

Rule 806 is another ground upon which the defendant asks for discovery concerning the credibility of the two agents who interrogated Ms. Obeso.  FRE 806 is entitled "Attacking and Supporting Credibility of Declarant."  That rule states:

> *When a hearsay statement, or a statement defined in Rule 801(d)(2)C, (D) or (E), has been admitted in evidence, the credibility of the declarant may supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness.  Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain.*  If the party against whom the hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination. (Ialics added).

The two agents who interrogated Ms. Obeso made a taped recording of the interrogation onto a DVD.  The agents statements within the DVD are hearsay (they essentially testified for her), and thus any evidence that touches on their credibility should be provided to the defense.

1

In addition, the defense specifically requests that the Court order the Government to provide in discovery any and all evidence in, oral, written or otherwise, that depict the training received by the arresting agents in handling suspects and interrogating suspects. These might include, but are not limited to, training manuals, briefings, videos, discs, and other written material.

(1)  <u>The Defendant's Statements</u>. The government must disclose to the defendant <u>all</u> copies of any written or recorded statements made by the defendant, *including those made by Ms. Obeso to the agents before being officially interrogated by the agents, i.e. at primary inspection or between primary and secondary inspection*; the substance of any statements made by the defendant which the government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the government agent; any response to any <u>Miranda</u> warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A).

The Advisory Committee Notes and the 1991 amendments to Rule
16 make clear that the Government must reveal <u>all</u> the
defendant's statements, whether oral or written, regardless
of whether the government intends to make any use of those
statements.

*Counsel for Ms. Obeso requests any and all of these
items at least two weeks before any evidentiary motion
hearing.*

(2)  <u>Arrest Reports, Notes and Dispatch Tapes</u>.  The
defendant also specifically requests the government to turn
over all arrest reports, notes, dispatch or any other tapes
that relate to the circumstances surrounding his arrest or
any questioning.  This request includes, but is not limited
to, any rough notes, records, reports, transcripts, audio or
video or dispatch tapes or DVDs or other documents in which
statements of the defendant or any other discoverable
material is contained.  Such material is discoverable under
Fed. R. Crim. P. 16(a)(1)(A) and <u>Brady v. Maryland</u>, 373 U.S.
83 (1963).  The government must produce arrest reports,
investigator's notes, memos from arresting officers,
dispatch tapes, sworn statements, and prosecution reports

1

pertaining to the defendant. <u>See</u> Fed. R. Crim. P.
16(a)(1)(B) and (C), Fed. R. Crim. P. 26.2 and 12(I).

(3) <u>Brady Material</u>. The defendant requests all
documents, statements, agents' reports, and tangible
evidence favorable to the defendant on the issue of guilt
and/or which affects the credibility of the government's
case. Under <u>Brady</u>, impeachment as well as exculpatory
evidence falls within the definition of evidence favorable
to the accused. *Accordingly, any and all <u>Brady, Henthorne</u>*
*and <u>Giglio</u> information concerning the primary and secondary*
*inspectors and the two agents who interrogated Ms. Obeso be*
*handed over to the defense before any evidentiary hearing.*
*If any of these agents are under investigation the defense*
*specifically asks for such information.* <u>United States v.</u>
<u>Bagley</u>, 473 U.S. 667 (1985), <u>on remand to</u>, 798 F.2d 1297
(9th Cir. 1986); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

(4) <u>Any Information That May Result in a Lower</u>
<u>Sentence Under The Guidelines</u>. The government must produce
this information under <u>Brady v. Maryland</u>, 373 U.S. 83
(1963). This request includes any cooperation or attempted
cooperation by the defendant as well as any information that
could affect any base offense level or specific offense

08cr1695TJW

characteristic under Chapter Two of the Guidelines. The defendant also requests any information relevant to the appropriate Guideline to be utilized in this case. All evidence of this should be forwarded to the defense.

(5) <u>The Defendant's Prior Record</u>. The defendant requests a copy of her prior record, if there is one. Fed. R. Crim. P. 16(a)(1)(B).

(6) <u>Any Proposed 404(b) Evidence</u>. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. The defendant requests that such notice be given four weeks before trial in order to give the defense time to adequately investigate and prepare for trial.

(7) <u>Evidence Seized</u>. The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1). This includes but is not limited to all evidence

1

seized as a result of this arrest, both from Ms. Obeso's person and from the vehicle which she was driving.

(8)  Request for Preservation of Evidence.  The defendant specifically requests the preservation of all dispatch tapes, audio or video tapes, or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relate to the arrest or the events leading to the arrest in this case.

This request includes, but is not limited to, all of the property seized from the vehicle Ms. Obeso was driving, vehicles related to her, her personal effects, and any evidence seized from the defendant or any third party. These items include, but are not limited to, Ms. Obeso's cell phone and all of her other property that was seized by the arresting agents.

Ms. Obeso asks the Court to order the Government to preserve all rough notes of *all* of the agents who were involved in this case, not just the agents who took notes during the interrogation.  This request would include all agents involved in the apprehension of Ms. Obeso, the seizure and search of the vehicle and its contents and the

1

08cr1695TJW

arrest of Ms. Obeso.  This would include each and every agent from primary inspection, secondary inspection and any agent involved in the post-arrest procedures, such which includes, but is not limited to the search of the vehicle and its contents.

The preservation of these notes is requested  for Jencks and Brady purposes.

Specifically, the defense asks the Court to order the Government to provide the defense with the notes prior to the suppression hearing in this matter so that there will be no need to interrupt the hearing.  The notes are relevant to the question of voluntariness, and the inadequacy and the inaccuracy of the Miranda warnings.  Related to this, the defense reiterates its request for any and all training materials related to the agents' training in searches, seizures and interrogating suspects

In addition, Ms. Obeso requests that the Assistant United States Attorney assigned to this case personally review all personnel files of each agent involved in the present case for impeachment material.  Kyles v. Whitley, 115 S. Ct. 1555 (1995); United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), appeal after remand, 985 F.2d 575 (9th Cir. 1992).

08cr1695TJW

(9)  <u>Tangible Objects</u>.  The defendant requests the opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, computers, or copies of portions thereof, which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to the defendant.  Fed. R. Crim. P. 16(a)(2)(C).

(10)  <u>Evidence of Bias or Motive to Lie</u>.  The defendant requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony, including but not limited to, the agents involved in the seizure and the arrest.

(11)  <u>Impeachment Evidence</u>.  The defendant requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant, including but not limited to, the agents involved in the arrest and any other persons arrested on the same day as Ms. Obeso.  <u>See</u> Fed. R. Evid. 608, 609 and 613; <u>Brady v. Maryland</u>, <u>supra</u>.

1

08cr1695TJW

Discovery of <u>Henthorne</u> evidence is also relevant at this time (before the suppression hearing).  Therefore, the defense respectfully asks the Court to order the government to provide this prior to the evidentiary hearing.  See, generally, Federal Rule of Evidence, Rule 806:

> When a hearsay statement, or a statement defined in Rule 801(d)(2)C,(D) or (E), has been admitted into evidence, the credibility of the declarant may be attacked, and if attacked may be supported by any evidence which would be admissible for those purposes if declarant had testified as a witness.[1]

Impeachment evidence is exculpatory evidence within the meaning of <u>Brady</u>. <u>Giglio</u>, 405 U.S. at 154, <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985).  <u>Brady</u> and <u>Giglio</u> includes material that *bears on the credibility of a significant witness in the case*, such as the interrogating agents. <u>United States v. Brumel-Alvarez</u>, 991 F.2d 1452, 1461 (9th Cir. 1993)(italics added).

"Because the prosecution is in a unique position to obtain information known to other agencies of the government, it may not be excused from disclosing what it does not know but could have learned." <u>Carriger v. Stewart</u>, 132 F.3d 463, 480 (9th Cir. 1997)(en banc).

---

[1]The defense does not concede that any of the agents' statements are admissible against the defendant, but in the event they are admitted, the defense requests this discovery.

1

08cr1695TJW

In <u>United States v. Blanco</u>, supra, 392 F.3d at 388, the
Ninth Circuit held that the government wrongly withheld
impeachment evidence concerning a Confidential Informant
[CI] in violation of Giglio and Brady, specifically, the
DEA's failure to give the prosecuting attorney information
that the CI had been an illegal alien and was given a
special immigration visa in exchange for his work as an
informant:

> A prosecutor's duty under <u>Brady</u> necessarily
> requires the cooperation of other government
> agencies who might possess <u>Brady</u> material.  In
> <u>United States v. Zuno-Arce</u>, 44 F.3d 1420 (9th
> Cir.)(as amended), we explained why it is the
> government's not just the prosecutors' conduct
> which may give rise to a <u>Brady</u> violation.
> Exculpatory evidence cannot be kept out of the
> hands of the defendant just because the Prosecutor
> does not have it, where an investigating agency
> does.  That would undermine <u>Brady</u> by allowing the
> investigating agency to prevent production by
> keeping a report out of the prosecutor's hands
> until the agency decided the prosecutor might have
> it, and by allowing the prosecutor tell the
> investigators not to give him certain materials
> unless he asks for them. <u>Id.</u>  See also: <u>United
> States v.Monroe</u>, 943 F.2d 1007, 1011, n.2 (9th Cir.
> 1991)(stating that "the prosecutor must disclose
> any [<u>Brady</u>] information within the possession or
> control of law enforcement personnel.")(quoting
> <u>United States v. Hsieh Hui Mei Chen</u>, 754 F.2d 817,
> 824 (1985).  There is no ambiguity in the law, the
> obligation under <u>Brady</u> and <u>Giglio</u> is the obligation
> of the government, not merely the obligation of the
> prosecutors.  As we wrote in <u>Zuno-Arce</u>,
> "exculpatory evidence cannot be kept out of the
> hands of the defense just because the prosecutor
> does not have it where an investigating agency
> does. 44 F.3d at 1427.  To repeat, <u>Brady</u> and <u>Giglio</u>

1

08cr1695TJW

impose obligations not only on the prosecutors, but on the government as a whole.

The defense discovery request also includes preservation of the vehicle and all of its contents. The defense asks the Court for permission to view the vehicle and all of its contents and to reweigh the marijuana seized in this case.

(12) <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct, including but not limited to, the agents involved in the arrest.

(13) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>. The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic including but not limited to, the agents involved in the arrest.

1

08cr1695TJW

(14)  <u>Witness Addresses</u>.  The defendant requests the name and last known address of each prospective government witness, including expert witnesses.  The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be called as a government witness.

(15)  <u>Name of Witnesses Favorable to the Defendant</u>. The defendant requests the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him or who was unsure of his identity, or participation in the crime charged.

(16)  <u>Statements Relevant to the Defense</u>.  The defendant requests disclosure of any statement relevant to any possible defense or contention that he might assert.

(17)  <u>Jencks Act Material</u>.  The defendant requests production in advance of trial of all material, including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500.  Advance production will avoid delays at the request of defendant to investigate the Jencks material.  A verbal acknowledgment that "rough" notes constitute an accurate account of the witness'

1

interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1).

(18) <u>Giglio Information</u>. Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony and/or cooperation in this case, and all other information which could arguably be used for the impeachment of any government witnesses. This includes tax returns and remuneration given to cooperating witnesses and agents, and any other item, tangible or intangible that indicates was given or offered to a witness in exchange for his or her cooperation, such as any and all gifts, favors, and lenient treatment given to such persons or their family members or friends. Lenient treatment includes but is not limited to favorable plea agreements, sentencing recommendations, grants of visas or other immigration benefits, preferred placement and treatment in the incarceration context and preferential bond recommendations. This request also extends to but is not limited to any modifications, assistance or forgiveness given by the government to a witness including any debt or tax relief or other compensation.

1

(19)   <u>Agreements Between the Government and Witnesses</u>.
The defendant requests discovery regarding any express or
implicit promise, understanding, offer of immunity in any
forum and jurisdiction, of past, present, or future
compensation, or any other kind of agreement or
understanding, including any implicit understanding relating
to criminal or civil income tax, forfeiture or fine
liability, between any prospective government witness and
the government (federal, state and/or local).  This request
also includes any discussion with a potential witness about
or advice concerning any contemplated prosecution, or any
possible plea bargain, even if no bargain was made, or the
advice not followed.

(20)   <u>Informants and Cooperating Witnesses</u>.  The
defendant requests disclosure of the names and addresses of
all informants or cooperating witnesses used or to be used
in this case, and in particular, disclosure of any
informant[s] who was a percipient witness in this case or
otherwise participated in the crime charged against Ms.
Obeso.  The government must disclose the informant's
identity and location, as well as disclose the existence of
any other percipient witness unknown or unknowable to the

08cr1695TJW

defense.   The defense needs the information so that it may prepare to defend the case.   Without the names and information that these people are allegedly supplying, there can be no meaningful preparation or defense or trial, and will result in various constitutional violations. <u>Roviaro v. United States</u>, 353 U.S. 53, 61-62 (1957).   The government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

(21)   <u>Bias by Informants or Cooperating Witnesses</u>.   The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. <u>Giglio v. United States</u>, 405 U.S. 150 (1972).   Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.   In addition, Ms. Obeso requests any and all evidence of any witness' inability to tell the truth, any and all investigations or arrests or convictions and any and all medical, psychological, drug or alcohol-related problems.

(22)   <u>Residual Request</u>.   Ms. Obeso intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal

1

08cr1695TJW

Procedure and the Constitution and laws of the United States.  Ms. Obeso requests that the government provide her and her attorney with the above requested material sufficiently in advance of a substantive motion hearing and/or trial to avoid unnecessary delay prior to cross-examination.

**IV.**

**ANY STATEMENTS MADE BY MS. OBESO SHOULD BE SUPPRESSED**

**A.    The Government Failed to Comply With <u>Miranda</u> and in Doing So, Violated Ms. Obeso's Right to Remain Silent, Her Right to An Attorney, Her Right to Due Process and Her Right to Be Free From An Unreasonable Search of Her Property**

Ms. Obeso was arrested at the Calexico Port of Entry in Imperial County California.  Her statements were taken in violation of the dictates of <u>Miranda v. Arizona</u>. 384 U.S. 436 (1966).

Ms. Obeso invoked her right to have an attorney and to remain silent.  As such both her Sixth Amendment right to counsel, her Fifth Amendment right to Due Process and her right to remain silent and not be a witness against herself have been abridged, as well as her right to be free from an unlawful search of her belongings.  The extraction of his statements also violated Ms. Obeso's Sixth Amendment right to confront and cross-examine her accusers as they interrogated her.  Accordingly, all of her statements must

be suppressed and any evidence stemming from the interrogation must be suppressed.

## B.    Review of the Interrogation

The agents in this matter interrogated Ms. Obeso.  A full transcript of this Digitally Recorded interrogation from April 28, 2008, has been made.  It is over 40 pages long.  Of relevance to this motion, the following occurred, starting at page 5:

**Officer Cardenas**: Before we ask you any questions you must understand your rights.  Do you understand that?

**Ms. Obeso**: Yes.  Do I write yes here?

**Officer Cardenas**: Just put your initials here.

**Ms. Obeso**: My initials?

**Officer Cardenas**: Yes. Your intials.

**Ms. Obeso**: I don't understand.

**Officer Cardenas**: Your initials.  What is your name?

**Ms. Obeso**: Vanessa Obeso Sanchez.

**Officer Cardenas**: OK.  "V.O."

**Ms. Obeso**: OK.

**Officer Cardenas**: You have the right to remain silent. Did you understand that?

**Ms. Obeso**: OK.

**Officer Cardenas**: Anything you say may be used against you in a court of law or any other procedure.

1

**Ms. Obeso:** OK.

**Officer Cardenas:** You have the right to consult with an attorney before you make any declaration or answer any question.

**Ms. Obeso:** OK.

**Officer Cardenas:** You have the right to have an attorney present with you during the interrogation.

**Ms. Obeso:** Yes.

**Officer Cardenas:** If you cannot afford an attorney, one will be appointed to you before you answer any questions if you so desire.

**Ms. Obeso:** Yes.

**Officer Cardenas:** If you decide to answer our questions at this time you still retain your right to stop the interrogation at any time or to stop the interrogation for the purpose of speaking to an attorney.  So in other words if you answer our questions you have the right to stop answering at any time to consult with an attorney.

**Ms. Obeso:** OK.

**Agent Vensk:** OK Vanessa, we're going to ask you some questions about why you're here because you've been arrested for importing drugs into the United States.

**Officer Cardenas:** OK.  They want to ask you some questions about why you're here.  You're here because you've

been arrested for bringing in your possession narcotics into the United States.

   **Agent Vensk:** You have the right to answer our question or not, that's your choice.

   **Officer Cardenas:** You have the right to answer our question or not, that's your right.

   **Ms. Obeso:** Uh huh.

   **Agent Vensk:** I need to know if you want to answer any questions.

   **Ms. Obeso:** Yes.

   **Agent Vensk:** I need her to read this paragraph out loud.

   **Ms. Obeso:** I have been read and explained this declaration of my rights and understand these rights completely.  I waive my rights freely and I have not been coerced or threatened in any way or promised any compensation.  I [unintelligble] at 1520 hours on April 28, 2008 and I have signed this document at 2107 on the same date.

   **Agent Vensk:** OK.  I need her to write her name here and then sign it.

   **Ms. Obeso:** Is my answering these questions going to expedite this in any way or should I wait for the attorney? I don't know.

1

**Officer Cardenas:** Well, it's like I explained it to you earlier and you understood, anything you say can be used in a court of law of any other procedure. She wants to know, I guess she's trying to figure out if she's going to answer or if she's going to wait for a lawyer. *Do you want to answer or do you want an attorney?*

**Ms. Obeso:** *Well, an attorney so he can advise me* regarding all this because the truth is I don't know. I don't know how much this can help me or harm me.

**Officer Cardenas:** *She wants to know, if she can have a lawyer present.* She wants to know how much she's going to be involved in this or if she's going to, if this is going to benefit her or to implicate her even more.

**Agent Vensk:** We can't give her advice on whether this is going to help her or hurt her.

**Officer Cardenas:** Uh huh.

**Agent Vensk:** OK. Will you tell her that?

**Officer Cardenas:** *We can't give you an ... a defense as to whether this is going to harm you or benefit,* how do you say that?

**Ms. Obeso:** Benefit.

**Officer Cardenas:** *Benefit you: we can't give you that answer.*

**Agent Vensk:** *Are you done?*

08cr1695TJW

**Officer Cardenas:** *That is your decision.*

**Agent Vensk:** *But this is her chance to tell her side of the story.  It's the only chance she' going to talk to us.*

**Officer Cardenas:** *This is the only time you're going to have a chance to explain your side of the story.*

**Ms. Obeso:** OK then, in that case, yes.

Officer Cardenas: *That is why we have this procedure. This is the only time you're going to have the chance to say, this is what happened regarding me, from my side.*

**Ms. Obeso:** OK, then.

A lengthy interrogation ensued.  Ms. Obeso never admitted knowledge or an intent to import narcotics.


**C.   Miranda Warnings Must Precede Custodial Interrogation.**

The Supreme Court has held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.  Miranda v. Arizona, 384 U.S. 436, 444 (1966).  Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.  Id.; see Orozco v. Texas, 394 U.S. 324, 327 (1969).

Once a person is in custody, <u>Miranda</u> warnings must be given prior to any interrogation. <u>See United States v. Estrada-Lucas</u>, 651 F.2d 1261, 1265 (9th Cir. 1980). Those warnings must advise the defendant of each of his or her "critical" rights. <u>United States v. Bland</u>, 908 F.2d 471, 474 (9th Cir. 1990). If a defendant indicates that he wishes to remain silent or requests counsel, the interrogation must cease. <u>Miranda</u>, 384 U.S. at 474. *See also*: <u>Edwards v. Arizona</u>, 451 U.S. 484 (1981). There is no question Ms. Obeso was in custody and nit free to leave.

D.   **<u>Ms. Obeso Invoked Her Right to Counsel and To Remain Silent and the Agents Failed to Honor Her Invocation</u>**

When Ms. Obeso was asked if she wanted "to answer or do you want an attorney," and she responded, "Well, an attorney so he can advise me regarding all this," the agents should have stopped immediately. This was an unequivocal invocation. Because this was "an expression of desire for an attorney's attorney," questioning should have ceased immediately. <u>Davis v. United States</u>, 512 U.S. 452 (1994); <u>Edwards v. Arizona</u>, *supra*, 451 U.S. 479 ("I want an attorney before making a deal."); <u>Oregon v. Bradshaw</u>, 462 U.S. 1039, 1041-1042 (1983) ("I do want an attorney before it goes very much further.").

1

If a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation.... This "second layer of prophylaxis for the <u>Miranda</u> right to counsel ... is "designed to prevent police from badgering a defendant into waiving his previously asserted <u>Miranda</u> rights. <u>Id.</u> at p. 458, which is precisely what happened here as the agents distorted the "benefits" of invoking one's right to counsel and to remain silent in the face of police interrogation.

The Supreme Court requires that "the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." <u>Missouri v. Seibert</u>, 542 U.S. 600, 608 (2004) *quoting* <u>Miranda v. Arizona</u>, 384 U.S. 467.

The rule is a prophylactic one, and it is a bright-line rule. Once a suspect has invoked, all questioning must cease. Trickery or coercion does not even need to be present. <u>Smith v. Illinois</u>, 469 U.S. 91, 99 (1984).

Here the agents told Ms. Obeso the could not advise her but then they went ahead and did it anyway.

Once a suspect has invoked her right to an attorney and to remain silent, and where the officers ignore the request for counsel, any answers to any further questioning by the

officers should not be considered to determine if the invocation was made. Id.  The agents violated the law.  They never should have engaged in the deceitful "admonition" that Ms. Obeso had better take advantage of this one and only chance she would have to "tell her side of the story" when what they were really just looking for were the elements of a crime.

In other words, "[a]n accused's post-request responses to further interrogation may not be used to cast doubt upon the clarity of the initial request for counsel." Id.  Thus, the agents protests when Ms. Obeso invoked her rights, that "this is the only time [she was] going to have the chance to say, this is what happened regarding me, from my side" has no bearing on whether she invoked her rights to remain silent and to have an attorney at her side.

These comments, that this was Ms. Obeso only chance to "tell her side of the story" is essentially the same as the exhortations in Edwards that were condemned, where the accused, after requesting counsel, was told that "he had" to talk to his interrogators. Edwards, supra, at 451 U.S. 479.

In Smith, the Supreme Court specifically condemned the officers' continued interrogation where they told the accused:

1

**Police**: "You have the right to consult with a lawyer and to have a lawyer present with you when you're being questioned.  Do you understand that?"

**Smith**: <u>"Uh, yeah, I'd like to do that."</u> Id.

**Police**: If you want to have a lawyer and you're unable to pay for one a lawyer will be appointed to represent you free of cost, do you understand that?

**Smith**: OK.

**Police**: Do you wish to talk to me at this time without a lawyer being present?

**Smith**: Yeah and no, uh, I don't know what's what, really.

**Police**: Well.  You either have [to agree] to talk to me this time without a lawyer being present and if you do agree to talk with me without a lawyer being present you can stop at any time if you want to.

**Smith**: All right, I'll talk to you then.   <u>Id.</u>

The Supreme Court noted the unequivocal request for counsel which occurred when the defendant was advised he could have an attorney, once the defendant was advised he could have an attorney: "Uh, yeah, I'd like to do that." The police were required to cease all questioning right then.

1

Likewise, as soon as the agent asked Ms. Obeso "Do you want to answer, or do you want an attorney?" and she answered, unequivocally, "Well, an attorney, so he can advise me," all questioning should have stopped. This request for an attorney to seek and receive legal advice is the core of the Fifth and Sixth Amendment rights being protected by the <u>Miranda</u> warnings, to have a lawyer, not an agent to give legal advice, and to choose to remain silent or not after having received counsel by an informed attorney.

The follow-up attempts by the agents to have Ms. Obeso retract her invocation of her rights, by telling her the interrogation would be her only chance ever to explain her situation, was not lawful on the part of the agents.

*This problem occurred in <u>Thompson v. Wainwright</u>, 601 F.2d 768 (6th Cir. 1979).* In <u>Thompson</u>, the defendant was accused and convicted of murder. The Sixth Circuit reversed the lower courts that admitted the defendant's statements. The defendant had made an equivocal request for counsel. The Sixth Circuit held that a police officer's "clarifying" question could not take the form of giving "advice" to the defendant or to argue with the defendant about what exactly an attorney would advise him to do, as is what happened in

1

this case, which was where the police and agents advise defendants that they will lose what the police said is his one and only chance to tell his side of the story.

In <u>Thompson</u>, at the motion hearing the police officer responded to the question: Did he (the defendant) at any time request that the interview cease?

No sir.  The only thing he said was he would like to tell his attorney first and we told him he could tell us just as well and that his attorney would not be able to tell us what he said so he wanted to tell us himself.

**Question:** Officer Cunningham. You indicated just a few seconds ago something about Mr. Thompson wanted to tell his attorney first?

**Answer:** Yes sir.

**Question:** He indicated that to you?

**Answer:** Yes sir.

**Question:** And then what did you tell him?

**Answer:** I advised him that if he told you that he would not be able to tell us what happened.

**Question:** And then he went ahead and told you?

**Answer:** Yes sir.

**Question:** But he did ask for an attorney?  He wanted to tell an attorney first?

1

**Answer:** Yes sir, and we advised him if he told an attorney first he would not be able to talk to us and tell us his side of the story.

**Question:** So he signed the card and he told you he wanted to talk to an attorney first?

**Answer:** No sir.  That was some time afterward.  The only thing he said was that he would like to tell his attorney first and we advised him that if he told his attorney he could not tell his side of the story.....  We explained to him that if he had anything that he would like to tell is that not only were we seeking evidence against him but anything he told us, if it would clear him, we would use it, also, and he said that time that he had something to say that he would like to talk to his attorney first.

**Question:** Do you recall if you made any response to that statement by Mr. Thompson?

**Answer:** Yes sir.

**Question:** What was your response sir?

**Answer:** I told the defendant that if he had anything he wanted to tell is that if he wanted and talked to an attorney, the first thing the attorney would tell him is not to say anything and that if he had anything that he thought we should know, that he should go ahead and tell us. Id.

The Sixth Circuit suppressed the statements:

1

Decision of this case requires that we make explicit what seems clearly implicit in <u>Nash</u>, that the limited permissible after an equivocal request for legal counsel may not take the form of an argument between interrogation and suspect about whether having counsel would be in the suspect's best interests or not. *Nor may it incorporate a presumption by the interrogator to tell the suspect what counsel's advice to him would be if he were present. Such measures are foreign to the purpose of clarification, which is not to persuade, but to discern.* {emphasis added].

These observations decide our case. The officer's own words, quoted above ... make clear that both persuasion and presumption took place here. Officer Cunningham's explanation of the consequences of the suspect's talking to counsel might have been innocuous, even proper, had it been correct...

Here they were incorrect: it was simply not true, as Thompson was told, that "if he told his attorney he could not tell his side of the story." Such advice is clearly subject to the the interpretation indeed, it is the most natural one that if Thompson told his attorney his version of the killing, he could never tell it to anyone else, could not even testify on his own behalf should he later choose to do so. Its mildest possible reading is as what Officer Latham's later "advice" made explicit, that if Thompson consulted with an attorney he would be told by him to say nothing more to the police. This may very well have been counsel's advice, though not necessarily so. *The point is that counsel's advice about what is best for the suspect to do is for counsel, not the interrogator, to give. And it is for him to give after consultation with his client and after weighing where the suspect's best interests lie from the point of view of the suspect, not from that of a policeman be he ever so well intentioned. Until this occurs, it is simply impossible to predict what counsel's advice would be; and even if it were, the right to advice of counsel surely is the right to advice from counsel, not from the interrogator.* [Emphasis added].

Here, the agents flatly ignored Ms. Obeso request for an attorney which she invoked for the specific purpose of receiving advice. Then the agents gave false advice to Ms. Obeso, *i.e.* that their questioning of her that day was the only day she could ever explain her circumstances. This implied that she would never be able to tell a judge or a jury what had happened. Not only was this incorrect advice, it was unsound because it was not based on a consultation with Ms. Obeso, as counsel is required to do prior to advising a client by an attorney.

Moreover, the agents are party opponents – they are not her attorney nor could they ever be. Their "advice" was wrong and it did not constitute "clarifying questions' which were not necessary in this case anyway, given that Ms. Obeso specifically asked for an attorney.

These tactics by the agents "depriv[ed Ms. Obeso] [of the] knowledge essential to h[er] ability to understand the nature of his rights and the consequences of abandoning them." Moran v. Burbine, 475 U.S. 412 (1986).

By telling her this was her only opportunity to relate what had happened to her, the agents stated the exact opposite of what one's Fifth Amendment rights are, that this is one's opportunity to *remain silent*. Thus they essentially told he that speaking to them would benefit her,

which is the opposite of what their job is to do, which is to warn her that her statements could and would be used in court to convict her.  Thus the agents' strategy completely undermined the _Miranda_ warnings.

All the statements and the evidence derived from the interrogation must be suppressed. _Wong Sun v. United States_, 471 U.S. 371 (1962).

**D.  The Government Must Prove That the Suspect had the Requisite Level of Comprehension of the _Miranda_ Waiver and the Waiver Must Be Uncoerced**

The second prong, requiring that the waiver be "_knowing and intelligent,_" mandates an inquiry into whether "_the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it._" _Id._ at 820-21 (quoting _Colorado v. Spring_, 479 U.S. 564, 573 (1987)).  This inquiry requires that the court determine whether "_the requisite level of comprehension_" existed before the purported waiver may be upheld. _Id._ (Emphasis added).

Thus, "_[o]nly if the `totality of the circumstances surrounding the interrogation' reveal_ _both_ _an uncoerced choice_ _and_ _the requisite level of comprehension may a court properly conclude that the _Miranda_ rights have been waived._"

Id. (quoting Colorado v. Spring, 479 U.S. at 573)
(citations omitted) (emphasis in original).

An involuntary waiver is determined by examining the
entire course of police conduct, including, but not limited
to, coercion, pressure and isolating the suspect

When interrogation continues without the presence of an
attorney, and a statement is taken, *a heavy burden rests on
the government to demonstrate that the defendant
intelligently and voluntarily waived his privilege against
self-incrimination and his right to retained or appointed
counsel.* Miranda, 384 U.S. at 475 (italics added).

There was no lawful waiver in this case. Here, the DVD
showing the interrogation proves that the agents used false
statements, in the form of improper and incorrect legal
advice to extract a "waiver" from Ms. Obeso.

The problem with doing what they did here is the agents
misadvised Ms. Obeso about the consequences of waiving her
right to remain silent and to obtain legal counsel by saying
that she would never again be able to explain what had
happened to her, when in fact the real consequence the
agents seek is a statement that will allow them to obtain a
conviction and to put the suspect in prison.

> The due process test takes into consideration
> the "totality of all the surrounding circumstances
> – both the characteristics of the accused and the

1

details of interrogation." *Ibid.* See also, *Haynes, supra,* at 513, *Gallegos v. Colorado*, 370 U.S. 49, 55... (1962); *Reck v. Pate, 367 U.S. 433, 440 ... (1961)("All the attendant circumstances upon the confession must be taken into account."}*; Malinski v. New York, 324 U.S. 401, 404 ...(1945)("If all the attendant circumstances indicate that the confession was coerced or compelled, it may not be used to convict a defendant"). The determination "depends upon a weighing of the circumstances of pressure against the power of resistance of the person confessing." *Stein v. New York*, 346 U.S. 156, 185 ... (1953). <u>Dickerson v. United States</u>, 530 U.S. 428, 433 (2000).

As the Court has said, we "indulge every reasonable presumption against a waiver of fundamental rights" whether they be the right to counsel or the right to remain silent." And we "do not presume acquiescence in the loss of fundamental rights." <u>Johnson v. Zerbst</u>, 304 U.S. 458, 466 (1938). Here, Ms. Obeso acquiesced in the face of the pressure and the reassuring lies of the agents.

All of what happened here in this DVD contravenes the Self Incrimination Claus: "No person... shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amdt. 5.

Therefore, all statements and evidence stemming from the interrogation must be suppressed. <u>Wong Sun v. United States</u>, 371 U.S. 471 (1962).

### IV.

### <u>MS. OBESO REQUESTS LEAVE TO FILE FURTHER MOTIONS</u>

1

08cr1695TJW

In the event the defense receives more discovery or additional legal issues or facts arise, it is requested that Ms. Obeso be allowed the opportunity to file additional motions.

**V.**

**CONCLUSION**

For the foregoing reasons, Ms. Obeso respectfully requests that the Court grant her motions to compel discovery and to suppress her statements and evidence stemming from them.

Dated:  June 8, 2008       Respectfully submitted,


/s/JOAN KERRY BADER

JOAN KERRY BADER

1

08cr1695TJW

1    **JOAN KERRY BADER**
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28